UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

PETER BURY,

                              Plaintiff,

            -against-

CONSUMER REPORTS, INC.,

                              Defendant.

**OPINION & ORDER**

24-CV-00295 (PMH)

Philip M. Halpern, United States District Judge:

Peter Bury ("Plaintiff") presses claims against his former employer, Consumer Reports, Inc. ("Consumer Reports" or "Defendant"), stemming from the denial of his requests to work remotely full time and from the termination of his employment in April 2022. Plaintiff filed his Complaint, the operative pleading, on January 15, 2024. (Doc. 1, "Compl.").

Plaintiff alleges that Defendant discriminated and retaliated against him in violation of: (1) the Americans with Disabilities Act of 1990 ("ADA"), 42 U.S.C. § 12101 *et seq.*; and (2) the New York State Human Rights Law ("NYSHRL"), N.Y. Exec. Law § 296 *et seq.* (Compl. at 8-10).[1] The alleged disabilities underlying Plaintiff's claims are "anxiety and panic attacks over being in public areas due to COVID for [Plaintiff's] own health and safety." (*Id.* ¶¶ 19, 45).

Defendant filed an Answer to the Complaint on March 19, 2024, and the case proceeded to discovery. (Doc. 8). Discovery closed on September 30, 2024. (Doc. 20).

Defendant filed its motion for summary judgment, pursuant to the briefing schedule set by the Court, on April 4, 2025. (Doc. 33; Doc. 34, "Def. Br."; Doc. 35; Doc. 36, "Friedfel Decl.").

---

[1] Citations to specific pages of the Complaint and other filings on the docket correspond to the pagination generated by ECF.

1

Plaintiff filed his opposition (Doc. 38, "Pl. Br."), and the motion was fully briefed with the filing of Defendant's reply (Doc. 37, "Reply").

For the reasons set forth below, Defendant's motion for summary judgment is GRANTED.

**BACKGROUND**

The Court recites the facts herein only to the extent necessary to adjudicate the extant motion for summary judgment and draws them from Defendant's Rule 56.1 Statement of Undisputed Material Facts and Plaintiff's responses thereto, Plaintiff's Statement of Additional Material Facts and Defendant's responses thereto, and the admissible evidence proffered by the parties. (*See* Doc. 35).[2] Unless otherwise indicated, the facts cited herein are undisputed.

Plaintiff worked for Consumer Reports for over twenty years—from September 5, 2000, until April 29, 2022—as an Acquisition Agent. (56.1 Stmt. ¶¶ 15, 109). Consumer Reports is a not-for-profit corporation which independently tests products and advocates for consumers. (*Id.* ¶ 1). Plaintiff, as an Acquisition Agent, was responsible for purchasing specific numbers, types, and models of products, either from stores or directly from the manufacturer, and delivering such products to Consumer Reports' facility for testing. (*Id.* ¶¶ 3, 21). Plaintiff's position also required, among other things, that he: (1) have a "[v]alid driver's license and the ability to drive a van"; (2) provide "information on in-store and online product availability and placement"; (3) be "able to travel to local retailers and manufacturers to conduct purchasing assignments"; and (4) be "able to purchase and transport heavy or large items as needed." (Friedfel Decl., Ex. 3 at 1-2). As of May 2020, Consumer Reports employed three Acquisition Agents including Plaintiff. (56.1 Stmt. ¶ 35).

---

[2] For the sake of clarity, the Court refers to Defendant's Statement of Undisputed Material Facts (Doc. 35 at 1-24) as "56.1 Stmt." and Plaintiff's Statement of Additional Material Facts (Doc. 35 at 24-25) as "Pl. 56.1."

2

Acquisition Agents are part of the NewsGuild of New York, a union, and their employment is governed by a collective bargaining agreement ("CBA"). (*Id.* ¶¶ 4, 15).

Prior to the COVID-19 pandemic, Plaintiff's work mostly consisted of shopping in-store and personally delivering products to Defendant's facility. (*Id.* ¶¶ 17, 22, 32). Like many businesses, in March 2020, Consumer Reports halted in-person operations and instructed its employees to work remotely. (*Id.* ¶ 33). Consumer Reports, in the late spring of 2020, asked its essential employees, including Acquisition Agents, to resume in-person work. (*Id.* ¶ 34). Two of Consumer Reports' three Acquisition Agents, all but Plaintiff, resumed in-person work in May 2020. (*Id.* ¶ 37). Because COVID-19 vaccines were still not readily available, Consumer Reports allowed employees, including Plaintiff, to continue to work from home upon request. (*Id.* ¶¶ 37-38). By May 2021, COVID-19 vaccines were widely available, and Consumer Reports' business needs changed—it had more projects that required in-store shopping than it had in 2020. (*Id.* ¶ 41). In fact, at this time, Consumer Reports' other two Acquisition Agents were so busy that they could not take on any additional in-person assignments. (*Id.* ¶ 43). Accordingly, Consumer Reports instructed that all employees return to in-person work, if required by their position, or go through a formal accommodation process to work remotely. (*Id.* ¶ 41).

Plaintiff, on May 11 or 12, 2021, was assigned to a project for which he was informed that he must resume in-person shopping. (*Id.* ¶ 44). Plaintiff, in response, requested to work fully remotely due to health conditions of his wife and mother. (*Id.* ¶ 45). Plaintiff did not inform Consumer Reports of his own disability. (*Id.*). Suzanne Nixon, Consumer Reports' Benefits Manager, responded to Plaintiff that in-person shopping was an essential function of his role, he must resume in-store shopping to meet the business's needs, and his accommodation request cannot be based on the health condition of his wife. (*Id.* ¶ 47). Nixon told Plaintiff that he was

eligible for New York paid family leave ("NYPFL") and Family Medical Leave Act ("FMLA") leave to care for his mother, and provided Plaintiff with the forms to request NYPFL or FMLA leave or seek a medical accommodation for himself. (*Id.*).

Plaintiff subsequently submitted a request for a reasonable accommodation, including a note from his doctor asking that Consumer Reports allow Plaintiff to work remotely for 90 days due to his severe generalized anxiety disorder. (*Id.* ¶¶ 49-50; *see also* Friedfel Decl., Ex. 19 at 3). To process Plaintiff's request, Nixon reached out to Joe Pacella, Plaintiff's manager, who informed Nixon that Plaintiff's current projects required four to seven hours of in-person shopping per day, five days per week. (56.1 Stmt. ¶ 51). On June 3, 2021, Nixon informed Plaintiff that his accommodation request—for fully remote work—was denied, as it would constitute an undue hardship on Consumer Reports. (*Id.* ¶ 56). Plaintiff was instead granted NYPFL and FMLA leave to care for his mother from June 7, 2021 through June 18, 2021. (*Id.* ¶ 59). Plaintiff extended his leave numerous times, but ultimately Plaintiff's NYPFL and FMLA leave ended on August 30, 2021. (*Id.* ¶ 62).

Plaintiff, on June 4, 2021, the day after his accommodation request was denied, informed Consumer Reports that he planned to file a complaint with the Equal Employment Opportunity Commission ("EEOC"). (*Id.* ¶ 58). Plaintiff believed Nixon, by denying his accommodation request, was discriminating against him due to his disability. (*Id.* ¶ 63). Consumer Reports, in response to Plaintiff's allegations, conducted an internal investigation, which was completed on August 3, 2021; and the internal investigation found no violation of Consumer Reports' policy in denying Plaintiff's accommodation request. (*Id.* ¶¶ 66-67). Plaintiff eventually filed a complaint with the EEOC on November 9, 2021. (*Id.* ¶ 113).

Pacella, Plaintiff's manager, reached out to Plaintiff in advance of Plaintiff's return from NYPFL and FMLA leave in August 2021. (*Id.* ¶ 68). Plaintiff informed Pacella that he planned to work fully remotely upon his return. (*Id.*). Pacella told Plaintiff that, while Plaintiff could do some work remotely, Plaintiff may be required to do in-store shopping or drop off samples at Consumer Reports' facility, depending on the business's needs. (*Id.*). Plaintiff was also informed by his union representative that the union could "negotiate [his] return to in-store shopping," but he could not "just refuse to do it." (*Id.* ¶ 70). Plaintiff, on August 28, 2021, two days before the end of his NYPFL and FMLA leave, submitted a second accommodation request. (*Id.* ¶ 71). To process Plaintiff's request, Consumer Reports asked Plaintiff to provide additional information from his doctor and inquired whether any arrangements other than fully remote work, such as obtaining items through curbside pickup, shopping during off-hours, or dropping samples off outdoors while socially distanced and masked, would accommodate Plaintiff's disability. (*Id.* ¶¶ 72, 74). Plaintiff refused to furnish documentation from his doctor and claimed Consumer Reports' requests were harassment and discrimination. (*Id.* ¶¶ 72-73). Ultimately, on September 29, 2021, Plaintiff responded to Consumer Reports' requests for information, stating that under no circumstances would he perform any in-person work. (*Id.* ¶ 78).

On October 1, 2021, Consumer Reports informed Plaintiff that it could not accommodate Plaintiff's second request to work fully remotely, and that Plaintiff would have to either resume in-person work or take medical leave. (*Id.* ¶ 79). On October 8, 2021, Plaintiff applied for short-term disability leave, which was ultimately approved from October 11, 2021 through November 30, 2021, and extended through April 8, 2022. (*Id.* ¶¶ 83, 87, 92-93). Plaintiff was paid his full salary during his short-term disability leave. (*Id.* ¶ 93). Plaintiff filed his threatened EEOC charge against Consumer Reports not long after, on November 9, 2021. (*Id.* ¶ 113). Shortly after Plaintiff

filed his EEOC charge, Nixon wrote in an email to The Hartford, which administers Defendant's disability insurance and family leave program: "This claim has great risk for Consumer Reports and we need a better understanding of where his claim stands in the process." (Pl. 56.1 ¶ 5).[3]

Ahead of the expiration of Plaintiff's short-term disability leave on April 8, 2022, Consumer Reports reached out to Plaintiff, advising him that he would need to return to in-person work or could apply for long-term disability leave and receive 60% of his pay, if he qualified. (56.1 Stmt. ¶ 94). Plaintiff responded that he was being harassed and discriminated against. (*Id.* ¶¶ 94, 96, 98). Plaintiff's union, on his behalf, asked Consumer Reports if it would accommodate Plaintiff and allow him to work fully remotely. (*Id.* ¶ 100). Consumer Reports expressed an interest in identifying a suitable accommodation to allow Plaintiff to work in-person, but Plaintiff refused to entertain any accommodation other than fully remote work. (*Id.* ¶¶ 97-98, 102). At this time, Consumer Reports needed Plaintiff to shop in-store for certain food projects. (*Id.* ¶ 99). Consumer Reports informed Plaintiff that it could not approve his request to work fully remotely and encouraged him to apply for long-term disability leave. (*Id.* ¶¶ 101-02). Plaintiff did not submit any further accommodation requests, did not apply for long-term disability leave, and did not return to work at the conclusion of his short-term disability leave. (*Id.* ¶ 103). Consumer Reports warned Plaintiff that, if he did not submit the required documentation for long-term disability leave or return to in-person work by April 22, 2022, he would be considered to have voluntarily

---

[3] This email is cited in Plaintiff's Statement of Additional Material Facts as "Pl. Ex. 3 CR 886-896." (Pl. 56.1 ¶ 5). This exhibit does not exist in the record. Plaintiff submitted three exhibits in connection with this motion, all deposition transcripts. Defendants submitted numerous emails in support of its motion, none of which bear the Bates numbers "CR 886-896." However, the Court accepts the content of that email to the extent Defendant admits same in response to Plaintiff's Statement of Additional Material Facts.

terminated his position. (*Id.* ¶ 104).[4] Eventually, on April 29, 2022, Consumer Reports informed Plaintiff that he was deemed to have voluntarily terminated his employment. (*Id.* ¶ 109).

## STANDARD OF REVIEW

Pursuant to Federal Rule of Civil Procedure 56, a court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to summary judgment as a matter of law." Fed. R. Civ. P. 56(a). "A fact is 'material' if it 'might affect the outcome of the suit under the governing law,' and is genuinely in dispute 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Liverpool v. Davis*, 442 F. Supp. 3d 714, 722 (S.D.N.Y. 2020) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). "'Factual disputes that are irrelevant or unnecessary' are not material and thus cannot preclude summary judgment." *Sood v. Rampersaud*, No. 12-CV-05486, 2013 WL 1681261, at *1 (S.D.N.Y. Apr. 17, 2013) (quoting *Anderson*, 477 U.S. at 248). The Court's duty, when determining whether summary judgment is appropriate, is "not to resolve disputed issues of fact but to assess whether there are any factual issues to be tried." *Id.* (quoting *Wilson v. Nw. Mut. Ins. Co.*, 625 F.3d 54, 60 (2d Cir. 2010)). Indeed, the Court's function is not to determine the truth or weigh the evidence. The task is material issue spotting, not material issue determining. Therefore, "where there is an absence of sufficient proof as to one essential element of a claim, any factual disputes with respect to other elements of the claim are immaterial." *Bellotto v. Cty. Of Orange*, 248 F. App'x 232, 234 (2d Cir. 2007) (quoting *Salahuddin v. Goord*, 467 F.3d 263, 281 (2d Cir. 2006)).

"It is not the movant's burden to show that no genuine factual dispute exists." *Vermont Teddy Bear Co. v. 1-800 Beargram Co.*, 373 F.3d 241, 244 (2d Cir. 2004) (citing *Adickes v. S.H.*

---

[4] Per the CBA, "[a]n employee who fails to report to work on the employee's requested reinstatement date or on the expiration date of his/her leave or extension, whichever is applicable shall be considered as having voluntarily terminated his/her employment." (*Id.* ¶ 110).

*Kress & Co.*, 398 U.S. 144, 157 (1970)). The Court must "resolve all ambiguities and draw all reasonable inferences in the non-movant's favor." *Id.* (citing *Giannullo v. City of N.Y.*, 322 F.3d 139, 140 (2d Cir. 2003)). Once the movant has met its burden, the non-movant "must come forward with specific facts showing that there is a genuine issue for trial." *Liverpool*, 442 F. Supp. 3d at 722 (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986)). The non-movant cannot defeat a summary judgment motion by relying on "mere speculation or conjecture as to the true nature of the facts." *Id.* (quoting *Knight v. U.S. Fire Ins. Co.*, 804 F.2d 9, 12 (2d Cir. 1986)). However, if "there is any evidence from which a reasonable inference could be drawn in favor of the opposing party on the issue on which summary judgment is sought, summary judgment is improper." *Sood*, 2013 WL 1681261, at *2 (citing *Sec. Ins. Co. of Harford v. Old Dominion Freight Line Inc.*, 391 F.3d 77, 83 (2d Cir. 2004)).

Should there be no genuine issue of material fact, the movant must also establish its entitlement to judgment as a matter of law. *See Glover v. Austin*, 289 F. App'x 430, 431 (2d Cir. 2008) ("Summary judgment is appropriate if, but only if, there are no genuine issues of material fact supporting an essential element of the plaintiffs' claim for relief."); *Pimentel v. City of New York*, 74 F. App'x 146, 148 (2d Cir. 2003) (holding that because plaintiff "failed to raise an issue of material fact with respect to an essential element of her . . . claim, the District Court properly granted summary judgment dismissing that claim."). Simply put, the movant must separately establish that the law favors the judgment sought. "Courts have acknowledged the dangers of summary judgment in discrimination cases: Because direct evidence of discriminatory intent will rarely be found, affidavits and depositions must be carefully scrutinized for circumstantial proof which, if believed, would show discrimination." *Osekavage v. Sam's E., Inc.*, 619 F. Supp. 3d 379, 389 (S.D.N.Y. 2022) (citation modified).

**ANALYSIS**

Plaintiff pleads four claims for relief: (1) disability discrimination and failure to accommodate pursuant to the ADA; (2) retaliation pursuant to the ADA; (3) discrimination, failure to accommodate, and hostile work environment pursuant to the NYSHRL; and (4) retaliation pursuant to the NYSHRL. (Compl. ¶¶ 64-78).

I.   ADA Discrimination Claim

The ADA prohibits covered entities from discriminating against qualified individuals on the basis of disability. 42 U.S.C. § 12112(a). The three-part burden-shifting framework established in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973) is used to analyze discrimination claims under the ADA. *Razzano v. Remsenburg-Speonk Union Free Sch. Dist.*, No. 20-03718, 2022 WL 1715977, at *2 (2d Cir. May 27, 2022). The plaintiff must first, under that framework, establish a *prima facie* case of employment discrimination based on a disability before the burden shifts to the defendant to offer a legitimate, non-discriminatory reason for the challenged actions. *Id.*; *see also Kovaco v. Rockbestos-Surprenant Cable Corp.*, 834 F.3d 128, 136 (2d Cir. 2016) ("Under that framework, a plaintiff must first establish a *prima facie* case of discrimination, which causes the burden of production to shift to the defendant to offer a legitimate, nondiscriminatory rationale for its actions."). If the defendant offers a legitimate, non-discriminatory reason for the challenged actions, then the burden shifts back to the plaintiff to "produce evidence and carry the burden of persuasion that the proffered reason is pretext." *McBride v. BIC Consumer Prods. Mfg. Co.*, 583 F.3d 92, 96 (2d Cir. 2009).

A *prima facie* case of disability discrimination requires a plaintiff to establish that: (1) "his employer is subject to the ADA;" (2) "he is disabled within the meaning of the ADA or perceived to be so by his employer;" (3) "he was otherwise qualified to perform the essential functions of

the job with or without reasonable accommodation;" and (4) "he suffered an adverse employment action because of his disability." *Brady v. Wal-Mart Stores, Inc.*, 531 F.3d 127, 134 (2d Cir. 2008). A plaintiff, to establish a *prima facie* case for failure to accommodate under the ADA, must show by a preponderance of the evidence that: (1) "his employer is subject to the ADA"; (2) "he was disabled within the meaning of the ADA"; (3) "with reasonable accommodation, [he] could perform the essential functions of his job"; and (4) "his employer refused to make a reasonable accommodation." *Tudor v. Whitehall Cent. Sch. Dist.*, 132 F.4th 242, 246 (2d Cir. 2025) (first quoting *Woolf v. Strada*, 949 F.3d 89, 93 (2d Cir. 2020) (per curiam); and then quoting *Natofsky v. City of New York*, 921 F.3d 337, 352 (2d Cir. 2019)).

Defendant admits that it is subject to the ADA and that Plaintiff had a qualifying disability. (Def. Br. at 17). However, Defendant argues that it is entitled to summary judgment on Plaintiff's ADA discrimination claim because: (1) Plaintiff cannot make a *prima facie* showing that he was qualified for his position, with a reasonable accommodation; (2) Defendant "engaged in the interactive process"; (3) Defendant offered Plaintiff a reasonable accommodation; and (4) Plaintiff suffered no adverse employment action. (*Id.* at 17-22). Plaintiff argues that there are material issues of fact with respect to his ADA discrimination claim because: (1) Plaintiff's "14-month remote success and online purchasing" prove in-person work was not an essential function of his position; (2) Defendant failed to demonstrate "hardship evidence"; (3) "harassing emails and threats" indicate bad faith on Defendant's part; and (4) Defendant's denial of Plaintiff's requests to work remotely, "threats of termination," and constructive discharge were adverse employment actions. (Pl. Br. at 9-10). For the reasons stated below, Plaintiff's disability discrimination and failure to accommodate claims fail because he fails to make a *prima facie* showing that he was qualified for

10

his position, that he suffered an adverse employment action because of his disability, and that Defendant refused to make a reasonable accommodation.

A. Essential Function

Assessing what constitutes an "essential function" of a position is a "fact-specific inquiry into both the employer's description of a job and how the job is actually performed in practice." *McMillan v. City of New York*, 711 F.3d 120, 126 (2d Cir. 2013). Nevertheless, "this issue can be resolved by summary judgment, if the material facts are undisputed." *Hunt-Watts v. Nassau Health Care Corp.*, 43 F. Supp. 3d 199, 128 (E.D.N.Y. 2014). Factors to consider, none of which are singularly dispositive, include "the employer's judgment, written job descriptions, the amount of time spent on the job performing the function, the mention of the function in a collective bargaining agreement, the work experience of past employees in the position, and the work experience of current employees in similar positions." *McMillan*, 711 F.3d at 126 (citing *Stone v. City of Mt. Vernon*, 118 F.3d 92, 97 (2d Cir. 1997)). "Considerable deference" is given "to an employer's judgment regarding what functions are essential for service in a particular position . . . ." *Tafolla v. Heilig*, 80 F.4th 111, 127 (2d Cir. 2023) (quoting *Shannon v. N.Y.C. Transit Auth.*, 332 F.3d 95, 100 (2d Cir. 2003)). In essence, "essential function" means "the 'fundamental' duties to be performed in the position in question, but not functions that are merely 'marginal.'" *Id.* at 119 (quoting *Stone*, 118 F.3d at 97). While a plaintiff's burden at the *prima facie* stage is not heavy, "[a] reasonable accommodation can never involve the elimination of an essential function of a job." *Id.* (alteration in original) (quoting *Shannon*, 332 F.3d at 100).

Here, the material facts are not in dispute, and they establish that Plaintiff could not perform the essential functions of his position—in-person shopping and delivering products to Defendant—even with a reasonable accommodation. Plaintiff repeatedly indicated to Defendant that, due to his

disability, there were no circumstances under which he could return to work in-person. (56.1 Stmt. ¶¶ 45, 78, 97, 109). Defendant, whose judgment is given "considerable deference," *Tafolla*, 80 F.4th at 127, consistently iterated, even prior to Plaintiff informing Defendant of his disability, that in-person work was an essential function of Plaintiff's position as an Acquisition Agent. (56.1 Stmt. ¶¶ 51, 68, 97). Indeed, the job description for the Acquisition Agent position requires that such employees provide "information on *in-store* and online product availability and placement," have the ability "to *travel* to local retailers and manufacturers to conduct purchasing assignments," and "purchase and transport heavy or large items as needed." (Friedfel Decl. Ex. 3 at 2-3 (emphasis added)). Prior to March 2020, the majority of Plaintiff's work was in-person, and beginning in May 2020, Defendant's two Acquisition Agents other than Plaintiff resumed in-person work. (56.1 Stmt. ¶¶ 17, 35). Eventually, the other Acquisition Agents were so busy with in-person work that, in May 2021, Defendant required Plaintiff to return to in-person work. (*Id.* ¶¶ 43-44). Plaintiff even admits that, when he returned from his short-term disability leave in April 2022, Defendant "needed Plaintiff to perform in-store shopping" for certain food projects. (*Id.* ¶ 98). The CBA which governed Plaintiff's employment does not mention the functions of his position, so that factor is neutral. However, every other factor strongly supports the finding that in-person shopping and delivering products to Consumer Reports was an essential function of Plaintiff's position.

Plaintiff's argument that his "14-month remote success and online purchasing prove he could perform," (Pl. Br. at 9), is unpersuasive. While it may be true that Plaintiff worked remotely during the COVID-19 pandemic, Plaintiff does not dispute that, by May 2021, Defendant's "business needs had changed, and there were more projects that required in-store shopping than there had been in 2020." (56.1 Stmt. ¶ 41). As evidenced by Plaintiff's role prior to the COVID-19 pandemic, the work of the two other Acquisition Agents, Plaintiff's job description, and

Defendant's judgment, in-person shopping "did not cease to be an essential function" of Plaintiff's position, "it was just temporarily suspended at the start of the COVID-19 pandemic—an unprecedented health emergency. . . ." *Thomas v. Bridgeport Bd. of Educ.*, No. 20-CV-01487, 2022 WL 3646175, at *4 (D. Conn. Aug. 24, 2022). Plaintiff repeatedly stated that under no circumstances could he conduct in-person work. (56.1 Stmt. ¶¶ 45, 78, 97, 109). Thus, Plaintiff could not perform the essential functions of his position, and he has failed to make out a *prima facie* case for disability discrimination as well as his failure to accommodate claim.

B.  Adverse Employment Action

Plaintiff likewise cannot show that he suffered an adverse employment action to satisfy the fourth element for a *prima facie* case of disability discrimination under the ADA. Plaintiff claims that Plaintiff suffered several adverse employment actions: (1) "denial of remote work"; (2) "threats of termination"; and (3) constructive discharge. (Pl. Br. at 7).

Defendant's denial of Plaintiff's requests to work remotely is not an adverse employment action for the purposes of his disability discrimination claim. *See Williams v. Dudley*, No. 23-CV-11018, 2025 WL 2842286, at *5 (S.D.N.Y. Sept. 4, 2025) ("Failing to grant an accommodation request, without more, is insufficient to adequately plead an adverse employment action in the context of a disability discrimination claim.").

Threats of termination likewise do not constitute an adverse employment action. *See Murray v. Town of N. Hempstead*, 853 F. Supp. 2d 247, 269 (E.D.N.Y. 2012) ("[T]hreats of termination cannot, by themselves, constitute an adverse employment action."); *Edwards v. Elmhurst Hosp. Ctr.*, No. 11-CV-04693, 2013 WL 839535, at *4 (E.D.N.Y. Feb. 15, 2013) ("Courts in this circuit have consistently held that 'threats of termination do not, by themselves, constitute an adverse employment action.'").

Plaintiff also cannot show that he was constructively discharged. "An employee is constructively discharged when his employer, rather than discharging him directly, intentionally creates a work atmosphere so intolerable that he is forced to quit involuntarily." *Gingold v. Bon Secours Charity Health Sys.*, 768 F. Supp. 2d 537, 545 (S.D.N.Y. 2011) (quoting *Terry v. Ashcroft*, 336 F.3d 128, 151-52 (2d Cir. 2003)). The standard for constructive discharge "is a 'demanding one,' because 'a constructive discharge cannot be proven merely by evidence that an employee . . . preferred not to continue working for that employer or that the employee's working conditions were difficult or unpleasant.'" *Id.* (quoting *Miller v. Praxair, Inc.*, 408 F. App'x 408, 409 (2d Cir. 2010)). Here, Plaintiff proffers no evidence to meet this demanding standard. The undisputed evidence shows that Defendant did all that it could, other than permit Plaintiff to abrogate essential functions of his position, to allow Plaintiff to keep his employment. *Accord Steger v. Nassau Cmty. College*, No. 19-CV-03026, 2022 WL 1085499, at *5 (E.D.N.Y. Mar. 8, 2022) ("Here, the record is devoid of any evidence suggesting that Defendant deliberately made Plaintiff's working conditions so intolerable that Plaintiff was forced to resign from her position. To the contrary, the undisputed facts establish that Defendant worked to accommodate Plaintiff's disability."). Thus, Plaintiff's disability discrimination claim fails as well for a lack of adverse employment action.

C. Reasonable Accommodation

Even assuming *arguendo* that Plaintiff could perform the essential functions of his position, Plaintiff has not proffered sufficient evidence that Defendant refused to offer Plaintiff a reasonable accommodation to satisfy the fourth element of a *prima facie* showing of a failure to accommodate claim.

Plaintiff, not Defendant, was responsible for the breakdown in the interactive process. "The ADA envisions an 'interactive process' by which employers and employees work together to assess

14

whether an employee's disability can be reasonably accommodated." *Tafolla*, 80 F.4th at 122 (quoting *McBride*, 583 F.3d at 99). "Liability for failure to provide a reasonable accommodation ensues only when the employer is responsible for a breakdown in that interactive process." *Cardenas v. N.Y. Queens Med. & Surgery P.C.*, No. 22-CV-07000, 2025 WL 3165674, at *8 (E.D.N.Y. Nov. 12, 2025). Plaintiff does not dispute that Defendant repeatedly attempted to engage in the interactive process with Plaintiff. (*See* 56.1 Stmt. ¶¶ 72, 74, 101). Plaintiff, for his part, never suggested an accommodation other than fully remote work and repeatedly refused to engage in discussions with Defendant about an alternative accommodation. (*See id.* ¶¶ 73, 75, 98, 109). The Second Circuit has "recognized that, where a breakdown in interactive process was manifestly the employee's fault, a failure-to-accommodate claim might be frivolous." *Tafolla*, 80 F.4th at 122 (quoting *Parker v. Sony Pictures Ent., Inc.*, 260 F.3d 100, 114 (2d Cir. 2001)). Here, the undisputed evidence clearly shows that Plaintiff, not Consumer Reports, was responsible for the breakdown of the interactive process.

Moreover, Defendant did offer Plaintiff a reasonable accommodation in the form of paid leave. (56.1 Stmt. ¶¶ 83, 87, 92-94). That Plaintiff did not avail himself of this accommodation does not make it unreasonable. *See Adams v. Master Carvers of Jamestown, Ltd.*, 91 F. App'x 718, 721 (2d Cir. 2004) ("[T]emporary leaves of absence can be considered reasonable accommodations."); *Ong v. Deloitte Consulting, LLP*, No. 21-CV-02644, 2025 WL 886947, at *18 (S.D.N.Y. Mar. 21, 2025) ("The opportunity to take a paid leave of absence . . . is plainly a reasonable accommodation."). Consumer Reports also offered to let Plaintiff obtain items through curbside pickup, shop during off-hours, or drop samples off outdoors while socially distanced and masked. (56.1 Stmt. ¶ 72). Plaintiff refused these accommodations as well.

Thus, Plaintiff's discrimination claim premised on a failure to accommodate also fails because he has not shown that Defendant refused to offer him a reasonable accommodation.

Accordingly, Plaintiff's first claim for relief, for ADA discrimination, is dismissed as Plaintiff failed to establish, through admissible evidence, that: (1) he could perform the essential functions of his position; (2) he suffered an adverse employment action; and (3) Defendant failed to accommodate his disability.

II.    ADA Retaliation Claim

To state a claim for retaliation under the ADA, a plaintiff "must show that he engaged in a protected activity, that he suffered an adverse employment action, and that a causal connection exists between that protected activity and the adverse employment action." *Ibela v. Allied Universal*, No. 21-01995-CV, 2022 WL 1418886, at *2 (2d Cir. May 5, 2022) (quoting *Fox v. Costco Wholesale Corp.*, 918 F.3d 65, 72-73 (2d Cir. 2019)). ADA retaliation claims, like disability discrimination and reasonable accommodation claims, are analyzed under the *McDonnell Douglas* burden-shifting framework. *Tafolla*, 80 F.4th at 125 (citing *Treglia v. Town of Manlius*, 313 F.3d 713, 719 (2d Cir. 2002)). At the first step, a plaintiff must make a *prima facie* showing that: "(1) [he] engaged in an activity protected by the ADA; (2) the employer was aware of this activity; (3) the employer took adverse employment action against [him]]; and (4) a causal connection exists between the alleged adverse action and the protected activity." *Morey v. Windsong Radiology Group, P.C.*, 794 F. App'x 30, 33 (2d Cir. 2019) (quoting *Treglia*, 313 F.3d at 719).

Defendant argues that: (1) Plaintiff fails to establish a causal connection between his protected activities and any adverse employment actions; and (2) Plaintiff suffered no adverse employment action when his employment with Consumer Reports was terminated because Plaintiff voluntarily terminated his own employment. (Def. Br. at 18-19). Defendant cites no

caselaw to support its assertion that Plaintiff voluntarily terminated his own employment and thus suffered no adverse employment action in this context. Moreover, for purposes of an ADA retaliation claim, the denial of a reasonable accommodation is an adverse employment action. *See Kirkland-Hudson v. Mount Vernon City Sch. Dist.*, 665 F. Supp. 3d 412, 460 (S.D.N.Y. 2023) ("[D]enials of accommodations can constitute adverse actions in the retaliation context . . . ."). However, Plaintiff's retaliation claim fails because Plaintiff fails to establish a causal connection between any purported protected activities and adverse employment actions.

To show a causal connection exists, "a plaintiff must show that 'but for' the protected activity, the adverse action would not have been taken." *Sharikov v. Philips Med. Sys. MR*, 103 F.4th 159, 170 (2d Cir. 2024) (citing *Tafolla*, 80 F.4th at 125). A causal connection can be shown "through direct evidence of retaliatory animus or 'indirectly, by showing that the protected activity was followed closely by discriminatory treatment.'" *Id.* (quoting *Tafolla*, 80 F.4th at 125)). "[T]he proximity of events may not alone suffice to make out a *prima facie* case of retaliation at the summary judgment stage." *Wein v. N.Y. City Dep't of Educ.*, No. 18-CV-11141, 2020 WL 4903997, at * 10 (S.D.N.Y. Aug. 19, 2020) (citing *EEOC v. Bloomberg L.P.*, 967 F. Supp. 2d 816, 855-56 (S.D.N.Y. 2013)).

Plaintiff fails to establish a causal connection between any purported protected activities and any adverse employment actions to make out a *prima facie* case of ADA retaliation. Notably, Defendant required Plaintiff to return to in-person work before Plaintiff ever sought an accommodation. (56.1 Stmt. ¶ 41). Defendant also denied Plaintiff's first accommodation request the day before Plaintiff threatened to file a complaint with the EEOC. (56.1 Stmt. ¶¶ 56, 58). Plaintiff's subsequent accommodation requests were denied on the same basis as his first request. (56.1 Stmt. ¶¶ 79, 101); *see also Frantti v. New York*, 850 F. App'x 17, 21 (2d Cir. 2021) ("As the

District Court correctly observed, [Plaintiff's] employer applied the same . . . policies to him before and after his 2015 complaints."). Even after Plaintiff filed an EEOC charge in November 2021, Defendant still attempted to work with Plaintiff to find a suitable accommodation and encouraged Plaintiff to apply for paid medical leave. (*Id.* ¶¶ 97-98, 101-02).

Plaintiff points to one email, sent shortly after his EEOC charge was filed, in which Nixon refers to Plaintiff's claim as a "great risk." However, "stray remarks of a decision-maker, without more, cannot prove a claim of employment discrimination." *Adams v. Master Carvers of Jamestown, Ltd.*, 91 F. App'x 718, 722 (2d Cir. 2004) (quoting *Abdu-Brisson v. Delta Airlines, Inc.*, 239 F.3d 456, 468 (2d Cir. 2001)). The only other evidence of a causal connection offered by Plaintiff is temporal proximity. (Pl. Br. at 10). Even assuming *arguendo* that the end of Plaintiff's employment was in fact an adverse employment action, the five-month gap between Plaintiff filing his EEOC charge in November 2021 and the end of his employment in April 2022 is insufficient to establish a causal connection. *See Orellana v. Farmingdale School District*, No. 20-CV-06050, 2022 WL 976811, at *8 (E.D.N.Y. Mar. 4, 2022) ("[D]istrict courts in this Circuit have 'consistently held that a passage of more than two months between the protected activity and the adverse employment action does not allow for an inference of causation.").[5]

Accordingly, because Plaintiff cannot establish a causal nexus between any protected activity and any adverse employment action, Plaintiff's retaliation claim is dismissed.[6]

---

[5] Defendant asserts, in its Reply, that it did not become aware of Plaintiff's EEOC charge until December 2021, citing no evidence to support this assertion. (*See* Reply at 11 n.5).

[6] The parties' briefing contains arguments regarding a federal hostile work environment claim asserted by Plaintiff. (*See* Def. Br. at 20-23; Pl. Br. at 10-11; Reply at 8-10). However, Plaintiff did not plead in the Complaint a federal hostile work environment claim. (*See* Compl. ¶¶ 64-71). Even had Plaintiff so pled, Plaintiff has not proffered any evidence other than emails from Defendant to Plaintiff regarding the status of his leave and accommodation requests. (*See* Pl. Br. at 10-11). Those emails are not so "severe and pervasive" as "to change the conditions of [Plaintiff's] employment." *Fox*, 918 F.3d at 75-76 (citing *Perry v. Ethan Allen, Inc.*, 115 F.3d 143, 149 (2d Cir. 1997)).

III.    State Law Claims

Plaintiff also asserts state law claims under the NYSHRL. "A federal district court may decline to exercise supplemental jurisdiction over pendent state law claims when it 'has dismissed all claims over which it has original jurisdiction.'" *Offor v. Mercy Med. Ctr.*, No. 17-CV-01872, 2018 WL 2947971, at *7 (S.D.N.Y. May 31, 2018) (quoting 28 U.S.C. § 1367(c)(3)). Having dismissed all of Plaintiff's claims over which the Court has original jurisdiction, the Court declines to exercise jurisdiction over Plaintiff's state law claims. *See, e.g.*, *McLeod v. Jewish Guild for the Blind*, 864 F.3d 154, 158 n.6 (2d Cir. 2017) ("Of course, a district court may decline to exercise supplemental jurisdiction over state and local law claims if it has dismissed all claims over which it has original jurisdiction.").

## CONCLUSION

Defendant's motion for summary judgment is GRANTED and the Complaint is dismissed. Plaintiff's ADA claims are dismissed with prejudice. Because the Court declines to exercise supplemental jurisdiction over the state law claims, they are dismissed without prejudice. The Clerk of Court is respectfully directed to terminate the pending motion (Doc. 33) and close this case.

**SO ORDERED.**

Dated:   White Plains, New York
         January 23, 2026

PHILIP M. HALPERN
United States District Judge

19